## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | | |
|---|---|---|
| SHIRLEY A. MCABOY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 7:17-cv-00813-LSC |
| | ) | |
| THE WESTERVELT COMPANY, | ) | |
| INC., | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OF OPINION

Before the Court is Defendant The Westervelt Company Inc's ("Westervelt")

Motion for Summary Judgment (doc. 30). The motion has been briefed and is ripe

for review. For the reasons stated below, Westervelt's Motion for Summary

Judgment (doc. 30) is due to be granted.

## I.    BACKGROUND[1]

Westervelt owns and manages a wood processing mill in Moundville, Alabama.

In October 2000, Westervelt hired Shirley McAboy ("McAboy" or "Plaintiff") as

a sorter operator. In June 2005, McAboy was promoted to the position of stacker

---

[1]    The facts set out in this opinion are gleaned from the parties' submissions of facts
claimed to be undisputed, their respective responses to those submissions, and the Court's own
examination of the evidentiary record. These are the "facts" for summary judgment purposes
only. They may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*,  17
F.3d 1386, 1400 (11th Cir. 1994). The Court is not required to identify unreferenced evidence
supporting a party's position.

operator. McAboy remained in this position until she was terminated by Westervelt in June 2016.

When McAboy was hired in 2000, she was given an Associate Information Guide ("Employee Handbook" or "Handbook").This Handbook contained a reporting procedure for incidents of alleged harassment or discrimination, along with a zero tolerance policy on harassment. (Doc. 31-1 at Ex. 4.) The Handbook was updated periodically, and employees signed an acknowledgement every time they received an updated version of the handbook. McAboy acknowledged receiving the Handbook and signed multiple acknowledgments that she received to the Handbook. (*Id.* at 32–34); (Doc. 31-2 at 2–7.) Although the Handbook contained a step based process for escalating disciplinary problems, discipline regarding profane language would often "depend on the situation." (Doc. 31-4 at 64.)

McAboy testified that while she worked at Westervelt both herself and her co-workers discussed sex. (Doc. 31-1 at 54, 88–89.) However, McAboy testified that many of these conversations involved sexually harassing remarks being made to her by various co-workers. In September of 2012, McAboy filed an EEOC charge against Westervelt that alleged she was being harassed by some of her male co-workers due to complaints about her job performance and the usage of profanity

towards her. (Doc. 31-2 at 11.) McAboy's charge acknowledged that she responded to these comments with further profanity and that she was reprimanded for and suspended for her comments. (*Id*.) The EEOC was unable to find any violation based upon its investigation of this charge, and thus dismissed her charge. (*Id.* at 12.) McAboy remained employed at Westervelt in the same position and at the same rate of pay after this incident. (Doc. 31-3 at 36.). According to McAboy, the harassing conduct continued as at least seven of her co-workers continued to discuss sex with her and solicit sex from her.

In June of 2015, Westervelt placed McAboy on eighteen months' probation due to her poor work performance and use of her cell phone at her work station. (Doc. 31-2 at 64.) In 2016, McAboy experienced a falling out with her co-worker Morris Ashe ("Ashe").( Doc. 31-1 at 107. ) McAboy testified that after her friendship with Ashe ended, Ashe began calling her a "b***h," "slut," and "dumb a**," and he "told [her] he wanted to f***k [her] daughter." (*Id.* at 175–76.) McAboy testified that Ashe "called [her] a b***h and ho . . . more than 30, 40 times" in 2016. (*Id.* at 112–13.) McAboy reported Ashe's comments to James Scott ("Scott"), her supervisor, and Nish Phillips ("Phillips"), the head of Human Resources. (*Id.* at 113). As a result of her complaint, Scott required Ashe and McAboy to exchange

apologies. (*Id.* at 113–14.) McAboy testified that Ashe's harassment started

again two days after Scott made the two exchange apologies. (*Id.* at 114.)

McAboy testified that she reported Ashe's continued harassment to Scott,

but Scott told her "y'all need to get along down there." (*Id.*) After the

second report to Scott, McAboy no longer reported Ashe. (*Id.*)

On June 8, 2016, Phillips received a report from Ashe that McAboy had

harassed him, telling him "[w]orry about your effing mama. You a b***h." (Doc.

31-8 at 75–76.) Ashe also complained to Scotty Noland ("Noland'), the production

superintendent, about this incident. (*Id.* at 33) Noland, Phillips, and Scott then met

to discuss both this incident and McAboy's continued employment at Westervelt.

(Doc. 31-4 at 70–72.) Noland, Phillips, and Scott decided to terminate McAboy.

(*Id.*) Upon her termination, McAboy sought to speak with Phillips about the

incident but Noland told her she could not speak to Phillips, and Phillips did not

answer McAboy's calls. (Doc. 31-1 at 77–78.)

McAboy filed a second EEOC charge in September 2016 alleging sexual

harassment by Ashe and asserting that she was terminated in retaliation for

complaining to her supervisors about Ashe's harassment. (Doc. 31-2 at 21.).

McAboy's EEOC charge only mentioned harassment by Ashe. (*Id.*) McAboy

received her notice of the right to sue letter on March 10, 2017 and filed this action on May 17, 2017 (Doc. 31-2 at 23.)

## II.    STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact[2] and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if "the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.* A genuine dispute as to a material fact exists "if the nonmoving party has produced evidence such that a reasonable factfinder could return a verdict in its favor." *Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (quoting *Waddell v. Valley Forge Dental Assocs.*, 276 F.3d 1275, 1279 (11th Cir. 2001)). The trial judge should not weigh the evidence, but determine whether there are any genuine issues of fact that should be resolved at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

In considering a motion for summary judgment, trial courts must give deference to the non-moving party by "view[ing] the materials presented and all factual inferences in the light most favorable to the nonmoving party." *Animal Legal Def. Fund v. U.S. Dep't of Agric.*, 789 F.3d 1206, 1213–14 (11th Cir. 2015)

---

[2]    A material fact is one that "might affect the outcome of the case." *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1049 (11th Cir. 2015).

(citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). However, "unsubstantiated assertions alone are not enough to withstand a motion for summary judgment." *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1529 (11th Cir. 1987). Conclusory allegations and "mere scintilla of evidence in support of the nonmoving party will not suffice to overcome a motion for summary judgment." *Melton v. Abston*, 841 F.3d 1207, 1220 (11th Cir. 2016) (per curiam) (quoting *Young v. City of Palm Bay, Fla.*, 358 F.3d 859, 860 (11th Cir. 2004)). In making a motion for summary judgment, "the moving party has the burden of either negating an essential element of the nonmoving party's case or showing that there is no evidence to prove a fact necessary to the nonmoving party's case." *McGee v. Sentinel Offender Servs., LLC*, 719 F.3d 1236, 1242 (11th Cir. 2013). Although the trial courts must use caution when granting motions for summary judgment, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

## III.  DISCUSSION

McAboy alleges that Westervelt violated Title VII by discriminating against her on the basis of sex because it (1) engaged in disparate treatment of her, (2) it

allowed her to be sexually harassed creating a hostile work environment, and (3) it terminated her in retaliation for reporting sexual harassment.

### a. DISPARATE TREATMENT

McAboy articulates, for the first time in her response to Westervelt's motion for summary judgment, a disparate treatment theory of discrimination in regard to discipline and termination under Title VII.[3]

### i. EXHAUSTION

The Eleventh Circuit has noted that a "plaintiff may not amend her complaint through argument in a brief opposing summary judgment." *See Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1314-15 (11th Cir. 2004) (noting that "[l]iberal pleading does not require that, at the summary judgment stage, defendants must infer all possible claims that could arise out of facts set forth in the complaint."). This is because "[e]fficiency and judicial economy require that the liberal pleading standard under *Swierkiewicz* and Rule 8(a) are inapplicable after

---

[3]     Plaintiff's first allusion to a possible disparate treatment claim outside of her hostile work environment claim occurred in the parties' joint status report where Plaintiff states for the first time that Westervelt discriminated against her "by applying its policies and procedures in a discriminatory fashion against Plaintiff on the basis of her sex." (Doc. 27 at 5.) The first explicit reference to Plaintiff's disparate treatment theory of discrimination with regard to discipline and termination and the factual allegations supporting it occurred in Plaintiff's response to Defendant's Motion for Summary Judgment. (Doc. 32.) Plaintiff's initial and amended complaints reference "disparate impact," but such a claim is distinct from a disparate treatment claim. (Docs. 1 & 6.) *See E.E.O.C. v. Joe's Stone Crab, Inc.,* 220 F.3d 1263 (11th Cir. 2000)(noting that disparate impact and disparate treatment are "discrete theories" of discrimination).

discovery has commenced." *Id.* at 1314. Therefore, the proper way for a plaintiff to bring a new claim of discrimination is to move to amend the complaint through Rule 15(a). *Id.*

Here, the Court's review of McAboy's initial and amended complaint does not reveal that McAboy asserted a disparate treatment theory in regard to discipline or her termination, nor that she plead sufficient facts to establish such a claim. The proper method through which McAboy should have sought to add such a claim would have been to seek leave to amend her complaint and assert such a claim. *See Id.* However, McAboy has not sought to amend her complaint. Nor has Westervelt waived any objection to such amendment. In fact, Westervelt has explicitly objected to McAboy's attempt to raise this claim for the first time in her brief opposing summary judgment. Therefore, Westervelt is entitled to summary judgment on McAboy's disparate treatment claim because it was not properly raised. *See Huddleston v Sunshine Mills, Inc.,* 965 F. Supp.2d 1298, 1310 (N.D. Ala. 2013) (refusing to consider a plaintiff's disparate impact theory of discrimination when this theory was raised for the first time in plaintiff's brief in opposition for summary judgment.); *Cooley v. Great Southern Wood Preserving*, 138 Fed.Appx. 149, 154 (11th Cir. 2005) (concluding that it was not an abuse of discretion for a district

court to dismiss a claim of hostile work environment raised for the first time in plaintiff's brief in opposition to summary judgment).

If this claim was allowed to proceed, it would not be barred by a failure to exhaust administrative remedies. Exhausting one's administrative remedies before filing a civil complaint for discrimination is required by 29 C.F.R. § 1614.407 and 42 U.S.C. § 2000e-16(c), and the Eleventh Circuit has held that courts have subject matter jurisdiction over Title VII claims only if the plaintiff "pursue[d] and exhauste[d] [those] administrative remedies." *Crawford v. Babbitt*, 186 F.3d 1322, 1326 (11th Cir. 1999). A judicial complaint is limited by claims that are "like or related to, or grew out of, the administrative allegations." *Basel v. Sec'y of Defense,* 507 Fed.Appx. 873, 876 (11th Cir. 2013) (per curiam); *see also Gregory v. Georgia Dept. of Human Resources*, 355 F.3d 1277, 1280 (11th Cir. 2004) (retaliation claim was not administratively barred because it was intertwined with other discrimination claims). Therefore, "[J]udicial claims are allowed if they 'amplify, clarify, or more clearly focus' the allegations in the EEOC complaint, but [the Eleventh Circuit] has cautioned that allegations of new acts of discrimination are inappropriate." *Gregory*, 355 F.3d at 1279–80 (quoting *Wu v. Thomas*, 863 F.2d 1543, 1547 (11th Cir. 1989)).

McAboy's EEOC Charge alleges that she was subject to harassment based on her sex and fired in retaliation for complaining about the alleged harassment. (Doc. 31-2 at 21.) McAboy's EEOC charge also asserts that she believed that her supervisor's explanation for her firing was "pretext for discrimination" and that she believed she was "discriminated against due to [her] sex" in violation of Title VII. (*Id.*) The Court finds that McAboy's disparate treatment claim grows out of her EEOC charge. An EEOC charge does not include a box to indicate discrimination based on disparate treatment or sexual harassment. However, sexual harassment and disparate treatment are both instances of sex discrimination, and not a new type of discrimination. Therefore, under the facts of this case, McAboy's disparate treatment claim grows out of the allegations in the EEOC charge and would properly be before this Court, if McAboy had actually alleged disparate treatment in her initial or amended complaint.[4]

### ii. MCDONNELL DOUGLAS FRAMEWORK

Even if McAboy was allowed to bring her disparate treatment claim, it would still fail. When a plaintiff "attempts to prove intentional discrimination in violation

---

[4]    Other courts have found that disparate treatment claims did not grow out of claims of sexual harassment based on the language in the plaintiff's EEOC charge. *See Swanson v Civil Air* Patrol, 37 F.Supp.2d 1312, 1321–22 (M.D. Ala. 1998) (finding that a plaintiff's claims of disparate treatment and unequal pay did not relate to or grow out of a plaintiff's EEOC charge of hostile work environment due to sexual harassment when the only mention of disparate treatment based on gender in the charge were Plaintiff's allegations of sexual harassment); *Blalock v. Dale Cty. Bd. of Educ.*, 84 F. Supp. 2d 1291, 1302 (M.D. Ala. 1999)

of Title VII using circumstantial evidence, we apply the now familiar shifting

burden framework established by the Supreme Court in *McDonnell Douglas Corp. v.*

*Green*, 411 U.S. 792 (1973) and *Texas Dep't of Community Affairs v. Burdine*, 450

U.S. 248 (1981)." *Schoenfeld v. Babbitt*, 168 F.3d 1257, 1267 (11th Cir. 1999). The

plaintiff must first establish a prima facie case of discrimination. *Id.* If the plaintiff

can satisfy this burden, an inference of discrimination arises. *Id.* The burden is then

shifted to the employer to refute this inference by articulating a "legitimate,

nondiscriminatory reason for its action." *Id.* If the employer articulates a legitimate

reason, "then the burden shifts back to the plaintiff to show that the proffered

reason is really pretext for unlawful discrimination." *Id.* The offered reason is not a

pretext for discrimination unless the plaintiff can show "both that the reason was

false, and that the discrimination was the real reason." *Springer v. Convergys*

*Customer Mgmt. Grp.*, 509 F.3d 1344, 1349 (11th Cir. 2007) (quoting *Brooks v. Cty.*

*Comm'n of Jefferson Cty.*, 446 F.3d 1160, 1163 (11th Cir. 2006)).

    To make out a prima facie case, a plaintiff must show: "(1) she is a member

of a protected class; (2) she was qualified for her job; (3) she was subjected to an

adverse employment action; and (4) her employer treated similarly situated

employees outside her class more favorably." *Curtis v. Broward Cty.*, 292

Fed.Appx. 882, 883 (11th Cir. 2008) (citing *Maynard v. Bd. of Regents of Div. Of*

*Univs of Fla. Dep't of Educ.*, 342 F.3d 1281, 1289 (11th Cir. 2003)). An adverse

employment action may be an ultimate employment decision such as termination.

*Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008). To qualify as an adverse

employment action, anything less than an ultimate employment decision must "in

some substantial way, alter the employee's compensation, terms, conditions, or

privileges of employment, deprive him or her of employment opportunities, or

adversely affect his or her status as an employee." *Id.* (citations omitted). To meet

the "similarly situated" requirement, a plaintiff must show that "[she] is similarly

situated in all relevant respects to the non-minority employee." *Silvera v. Orange

Cty. Sch. Bd.,* 244 F.3d 1253, 1259 (11th Cir.2001).

Westervelt does not contest that McAboy is a member of a protected class;

that she was qualified for her job; and that she was subjected to what would

constitute adverse employment actions. However, Westervelt argues that McAboy

is unable to establish that Defendant treated similarly situated employees outside

her class more favorably in order to establish a *prima facie* case. The Court agrees.

McAboy argues that her suspension without pay, probation, and termination

were all adverse employment actions based on her sex. When there are accusations

of discriminatory discipline, the "quantity and quality of the comparator's

misconduct [must] be nearly identical to prevent courts from second-guessing

employers' reasonable decisions and confusing apples with oranges." *Burke–Fowler v. Orange Cty., Fla.*, 447 F.3d 1319, 1323 (11th Cir. 2006) (quoting *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999)). Therefore, the comparator must be "similarly situated to the plaintiff in all relevant respects." *Stone & Webster Const., Inc. v. U.S. Dept. of Labor*, 684 F.3d 1127, 1135 (11th Cir. 2012) (quoting *Rioux v. City of Atlanta*, 520 F.3d 1269, 1280 (11th Cir. 2008)). When seeking to find a proper comparator from a pool of co-employees, the Court should not ask whether the employees hold the same job titles, but whether the employer subjected them to different employment policies. *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1326 (11th Cir. 2011) (citing *Lathem v. Dep't of Children and Youth Services*, 172 F.3d 786, 793 (11th Cir. 1999)).

However, McAboy has not presented evidence of similarly situated comparators. To support her argument that she was treated differently than male comparators, McAboy points to her own testimony that (1) her male supervisor told her that she was a liar, (2) that Westervelt did not apply its "zero tolerance" policy against Ashe, (3) that disciplinary policies were applied against her that were not applied against others like Ashe and Johnson, and (4) that her supervisor told her not to go to the office about her issues with Ashe because "they're going to fire both of y'all." (Doc. 32 at 25–26.)

Yet, the testimony McAboy cites does not present any basis for this Court or a jury to find that Westervelt treated any similarly situated comparators differently.[5] McAboy points to her own testimony that "they always say I'm lying" to assert that Westervelt credited males' versions of events when disciplinary actions are considered. However, the evidence McAboy points to indicates that Noland Scott had issues verifying her complaints, suggesting that McAboy may not have been similarly situated to these alleged male comparators who were believed instead of her. (*See* Doc. 31-3 at 16–17, Ex. 1.) [6]

Additionally, although McAboy identifies Ashe and Johnson as comparators, she fails to provide any evidence as to why they are similarly situated. Later in her brief, McAboy does point to evidence that Johnson, an alleged male comparator, was not fired or disciplined for multiple violations of employee rules and having a number of final notices. (Doc. 32 at 32.) However, the evidence indicates that Johnson was not similarly situated to McAboy because he was often subject to

---

[5]     McAboy's was replaced by a female co-worker. (Doc. 31-1 at 142.)

[6]     The Court notes that while self-serving testimony may create a genuine issue of material fact, there are many assertions McAboy makes in her brief for which she does not have any personal knowledge of. *See Stewart v Booker T. Washington Ins.*, 232 F.3d 844, 851 (11th Cir. 2000). A plaintiff cannot survive summary judgment merely by using her own testimony to support assertions that she lacks personal knowledge of. *See Stewart,* 232 F.3d at 851; *Bartell v. Fulton County*, 2018 WL 5310174 at *4–5 (11th Cir. 2018) (per curiam)(noting that a district court properly concluded that a plaintiff failed to meet her burden at summary judgment when she generally asserted that comparators were "treated more favorably").

discipline for attendance issues, and not for problems with co-workers or complaints on his use of language like McAboy. (Doc. 31- 7 at Ex. 1.)

To the extent McAboy argues that Ashe engaged in the same conduct and was not disciplined, McAboy has not pointed this Court to evidence that Ashe had the same low performance ratings [7] or that Ashe was not disciplined for such language when it was brought to Westervelt's attention. *See Walker v. St. Joseph's/Candler Health Sys., Inc.*, 506 Fed.Appx. 886, 890 (11th Cir. 2013) (finding that a comparator was not a proper comparator because the "quality and quantity of complaints against him" differed).[8]

McAboy's deposition testimony does not identify any other employee who was on probation and violated a last chance notice but was not terminated. (Doc. 31-1 at 138–39.) Moreover, McAboy's testimony reveals that she lacks knowledge as to whether any other employees with her similar history of incidents were terminated by Westervelt or subject to different discipline, despite her argument

---

[7] The Court is not required to identify unreferenced evidence supporting a party's position. As such, review is limited to exhibits and specific portions of the exhibits specifically cited by the parties. *See Chavez v. Sec'y, Fla. Dept. of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) ("[D]istrict court judges are not required to ferret out delectable facts buried in a massive record . . . .") (internal quotations omitted).

[8] The Court notes that McAboy's argument about the application of the "zero tolerance" policy and discipline appears to be a nonsequitur as she argues that the Handbook was not appropriately followed or consulted by her supervisors but then argues that the Handbook required Ashe and Johsnon to be disciplined equally to her.

otherwise in her brief. (Doc. 31-1 at 139.)[9] Ultimately, McAboy's complaint about alleged male comparators does not provide sufficient factual information for a jury to conclude that any of these individuals were "involved in or accused of the same or similar conduct." *Edmonds v University of Miami*, 441 Fed.Appx. 721, 724 (11th Cir. 2011).

Even if McAboy could establish prima *facie* case, Westervelt has met its burden to assert legitimate, nondiscriminatory reasons for its discipline and termination of Plaintiff. Westervelt asserts that McAboy was terminated due to a documented history of problems at work and a recent dispute with Ashe that "violated her last chance agreement." (Doc. 31-3 at 42.). Prior to that incident, McAboy had consistently documented safety and performance related issues, including problems getting along with her co-workers.[10] Moreover, Westervelt argues that at the time McAboy was terminated she was still on probation for her failure to improve her performances and using her cell phone at her workstation at the time.

---

[9]     At the time McAboy was fired she had been suspended three times, and had received a last chance notice regarding her ability to get along with co-workers. (Doc. 31-2 at 49, 54–55,64, 236–37.)

[10]     McAboy received negative performance reviews concerning her communications with other workers in 2001, 2002, 2009, 2010, 2011, and 2012. (*See* Doc. 31-2 at 26, 32, 39, 46, 48, 57.)

McAboy attempts to create pretext by pointing to inconsistencies in Westervelt's explanation for her termination.[11] McAboy argues that there are inconsistencies because (1) the memo concerning her termination was dated June 2016 and October 2016, (2) Westervelt's explanation for her firing in the memo included an incident where Ashe was punished, and (3) her testimony that Westervelt inconsistently applied procedures to her that did not apply to others. However, none of these allegations create a question of material fact as to whether the proffered reason was both false *and* that discrimination was the real reason.

 While the inconsistent dating on the memo is suspect, McAboy has not presented sufficient evidence from which any reasonable factfinder could make an adverse inference that the information contained in it was false or discriminatory. The evidence supporting Westervelt's explanation is produced not only in the memo, but by documentary evidence, identified in the record by Defendant, of past disciplinary actions against McAboy and the testimony of the memos creators. Although this evidence may create a question of fact as to when the memo was

---

[11] McAboy does not present evidence to rebut Westervelt's legitimate, nondiscriminatory explanation. McAboy concedes that she was subject to discipline and poor performance reviews. Instead, McAboy seeks to have this Court and a jury find that the discipline applied against her and used to justify her termination was pretextual due to inconsistencies.

created or its initial contents, it does not create a question of fact as to whether Westervelt's legitimate, nondiscriminatory explanation was pretextual.[12]

Furthermore, McAboy's insistence that the memo is inconsistent is unavailing. In the memo documenting the reasons for McAboy's termination, Westervelt included as evidence of the hostile work environment McAboy created, a prior confrontation she had with Ashe. (Doc. 31-3 at 33.) McAboy attempts to manufacture an inconsistency by asserting that the inclusion of this incident creates an inconsistency because Ashe was later punished for his role in that altercation. However, the actual text from the memo McAboy cites states that "Morris and Shirley had a verbal altercation in the break room. They both said some things they should not have said and James told them both to stop." (*Id.*) The memos mention of this incident with Ashe, in which he was disciplined, does little to create an inconsistency as it reveals that both McAboy and Ashe "said some things they should not have [said]." (*Id.*) Additionally, the memo contains other statements regarding McAboy's inability to get along with her co-workers. This is insufficient to create a genuine issue of material fact as to whether Westervelt's decision to fire McAboy was pretextual as it was based on her poor performance, including both

---

[12]     The case Plaintiff cites to argue that this is sufficient to surpass summary judgment is both non-binding precedent as a Louisiana State Supreme Court case, and distinguishable as the edited documents in that case were essential to questions of chain of title. *See Stevens v. State Mineral Bd.*, 255 La. 857, 867 (La. Sup. Ct. 3/30/1970).

her current disagreement with Ashe and her past issues with other co-workers. *See Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1377 (11th Cir. 1996) (noting that a plaintiff failed to show pretext because "there is nothing inconsistent between the [general] written reason and the more specific reason justifying [plaintiff's] termination.").

Lastly, McAboy argues "another 'incoherence' or 'inconsistency' is Westervelt's application of procedures to Plaintiff which did not apply to others." (Doc. 32 at 27.) In support of this assertion, McAboy presents evidence that she was subject to coaching while at Westervelt and that this coaching did not require the production of documents, even though it could be a basis for termination. (Doc. 31-4 at 84.)[13] McAboy then asserts, without referencing any evidence, that these coaching sessions were the basis for additional discipline against her and that "no one else was required to participate in 'coaching' sessions…." (Doc. 32 at 27.) However, the evidence presented by McAboy indicates that Johnson, McAboy's alleged male comparator, was in-fact subject to coaching. (*See* Doc. 31-7 at Ex. 1.)

While the Court will interpret all reasonable inferences in favor of the plaintiff, the Court is not tasked with finding that a reasonable jury would make "an

---

[13] McAboy argues that the coaching sessions were not prescribed by Westervelt's written policies, but provides no evidence to support this assertion. (*See* Doc. 32 at 10–11, 27.)

inference based on speculation and conjecture." *Blackston v. Shook and Fletcher Insulation Co.,* 764 F.2d 1480, 1482 (11th Cir. 1985). Therefore, the Court finds that the only evidence McAboy has offered in support of her pretext argument, in this instance, is that she was subject to coaching that allowed for discretionary decisions to be made in terms of her employment. This evidence does little to rebut or call into question Westervelt's reliance on other documented instances of improper behavior as a basis for firing McAboy or imply that it was motivated by gender based animus. *See McCollum v. Bolger,* 794 F.2d 602, 610 (11th Cir. 1986) ("Personal animosity is not the equivalent of sex discrimination and is not proscribed by Title VII. The plaintiff cannot turn a personal feud into a sex discrimination case by accusation.") Thus, McAboy has failed to establish that Westervelt's proffered reasons for her termination or discipline were pretextual.

### iii. THE CONVINCING MOSAIC

McAboy argues that her disparate treatment claim should nevertheless be allowed to proceed because she has presented sufficient circumstantial evidence to create "a reasonable inference of intentional discrimination." *Lockheed-Martin Corp.*, 644 F.3d at 1321 (finding that even if a plaintiff fails in her *McDonnell Douglas* claim, "[a] triable issue of fact exists if the record, viewed in the light most

favorable to the plaintiff, presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decision maker.").

In *Lockheed-Martin Corp.,* the Eleventh Circuit held summary judgment was inappropriate on a plaintiff's claim of disparate treatment even in absence of a proper comparator because there was substantial evidence of discriminatory racial animus, including documented racial tensions following a workplace shooting resulting from racism against black employees, and evidence indicating that the discipline matrix utilized included the plaintiff's protected class. *Id.* at 1329–30. Similarly, the Eleventh Circuit found that a Title VII plaintiff had created a convincing mosaic, when the plaintiff proffered evidence that that after disclosing her pregnancy, the fact that she was pregnant "became part of the decision-making process regarding her" and that "pregnancy was a subject of the discussions that led to her termination." *Holland v. Gee*, 677 F.3d 1047, 1063 (11th Cir. 2012).

McAboy has not presented a "convincing mosaic" of evidence because any evidence of gender –motivated animus in regard to her alleged disparate treatment in discipline and ultimate termination is missing. McAboy makes a number of allegations and conclusory statements that she was treated differently from other male employees. McAboy asserts that she has presented "evidence that she was treated worse than males at the plant because she was branded a liar and warned

not to complain about her coworkers' performance." (Doc. 32 at 23.) However, the evidence McAboy offers to support her assertion is Noland's testimony that he was "never able to validate that she was correct that other people were not doing their job" and a memorandum indicating that Noland had dealt with and investigated a number of unfounded complaints by McAboy. (Doc. 31-3 at 16-17, Ex. 1.) This evidence provides little, if any, circumstantial evidence from which a reasonable jury could conclude that gender played a role in the discipline or termination of McAboy.

McAboy also argues that other circumstantial evidence of discriminatory animus exists because the "zero tolerance" policy towards harassment was not applied to Ashe, a male, for his alleged harassment of her. However, McAboy has not presented circumstantial evidence from which a reasonable jury could conclude that this occurred because of his sex or as a result of discriminatory considerations. Unlike the plaintiffs in *Lockheed-Martin* and *Holland*, McAboy has not presented circumstantial evidence indicating that her status as a member of a protected class served as the basis for or was even considered by her supervisors in their discipline of her or others.

Nevertheless, McAboy asserts that a convincing mosaic of discrimination was created because "her side of the story was being discredited unfairly" and

there is evidence that she was placed on coaching plans, which gave a supervisor

discretion as to improvements, and that her failure to improve motivated her

termination. Again, McAboy presents no evidence that gender based

considerations played a role in these decisions. Although Plaintiff cites to *Hamilton

v. Southland Christian School, Inc.,* in support of her case, *Hamilton* reversed

summary judgment because the plaintiff produced "enough non-comparison

circumstantial evidence to raise a reasonable inference of intentional

discrimination." 680 F.3d 1316, 1320–21 (11th Cir. 2012). Here, much of

McAboy's alleged mosaic is based off of her comparative assertions that "she was

treated worse than males." (Doc. 32 at 24.)

Yet, McAboy ultimately asserts that these actions along with the

circumstances at the mill create a convincing mosaic. However, McAboy's

conclusory statement about the circumstances at the mill is unaccompanied by any

presentation of evidence as to the circumstances at the mill or how it would create

an inference of intentional discrimination. (*Id.*) While the Court assumes that

McAboy is referring to the alleged sexual harassment at Westervelt, the Court is

not tasked with constructing this convincing mosaic for the plaintiff. *See Hill v

Branch Banking and Trust Co*., 264 F. Supp. 3d 1247, 1263 (N.D. Ala. 2017) ("In

her brief, [plaintiff] recites the relevant case law on how a plaintiff may establish a

'convincing mosaic,' but does not explain what facts would compose it in this case. The court cannot construct the picture for her.").[14] Therefore, Westervelt is entitled to summary judgment on McAboy's disparate treatment claims because McAboy has failed to present sufficient circumstantial evidence from which any reasonable jury could infer intentional discrimination by Westervelt.

### b. SEXUAL HARASSMENT- HOSTILE WORK ENVIRONMENT

#### i. EXHAUSTION

Westervelt argues that McAboy's allegations of sexual harassment by individuals other than Ashe are barred because neither these individuals nor these alleged incidents were included in her EEOC charge. A plaintiff "cannot allege new acts of discrimination" as only new allegations that "amplify, clarify, or more clearly focus the allegations in the EEOC charge are permitted." *Wu,* 863 F.2d at 1547. Although McAboy only alleges that she was harassed by Ashe in her EEOC charge, her allegations of harassment by other co-workers are offered to support and not supplant her case for establishing a hostile work environment at Westervelt. Therefore, McAboy's allegations against other co-workers are not barred by a failure to exhaust because they serve to amplify her complaints and

---

[14] The Court notes that, even if Plaintiff had pointed it to evidence that sexual harassment was allegedly occurring in this instance, McAboy has not presented substantial evidence of impermissible or discriminatory considerations by her supervisors such that a convincing mosaic of circumstantial evidence was created.

would be reasonably expected to grow out of her charge of a hostile work environment.[15] *See Gregory*, 355 F.3d at 1280.

## ii. *PRIMA FACIE* CASE

McAboy alleges that Ashe, Johnson, and at least seven other co-workers created a sexually hostile work environment in violation of Title VII. As *Reeves v. C.H. Robinson Worldwide, Inc.* sets forth,

> [t]he legal standard for hostile work environment claims in this Circuit is well-settled. To prove a hostile work environment, the plaintiff must show [:]
>
>> (1) that he or she belongs to a protected group; (2) that the employee has been subject to unwelcome sexual harassment, such as sexual advances, requests for sexual favors, and other conduct of a sexual nature; (3) that the harassment must have been based on the sex of the employee; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) a basis for holding the employer liable.

594 F.3d 798, 808 (11th Cir. 2010) (citing *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir. 1999) (en banc), *cert. denied*, 529 U.S. 1068 (2000)).[16]

---

[15]    While Defendant's cite *Scott v Shoe Show, Inc.,* 38 F. Supp. 3d 1343 (N.D. Ga. 2014) to assert that McAboy's additional allegations should be barred, the Court notes that *Scott* is distinguishable because it involved the addition of an ADA claim when the plaintiff's EEOC charge alleged Title VII discrimination.

[16]    McAboy has not alleged or argued that she was subject to sexual harassment by a supervisor. Although McAboy alleges that her supervisor Scott contributed to the sexually hostile work environment because he was in a relationship with one of her co-workers, she has not made

Westervelt claims that it is entitled to summary judgment on McAboy's hostile work environment claim because she failed to establish that (1) the comments were unwelcome, (2) the harassment was based on sex, (3) the harassment was sufficiently severe or pervasive to alter her working environment, and (4) there is a basis for holding Westervelt liable.

### 1. Unwelcome Sexual Harassment

"In order to constitute harassment, this conduct must be unwelcome in the sense that the employee did not solicit or incite it, and in the sense that the employee regarded the conduct as undesirable or offensive." *Henson v. City of Dundee*, 682 F. 2d 897, 903 (11th Cir. 1982). "Where a plaintiff's action in the workplace shows that she was a willing and frequent participant in the conduct at issue, courts are less likely to find that the conduct was 'unwelcome.'" *Balletti v. Sun–Sentinel Co.*, 909 F.Supp. 1539, 1547 (S.D. Fla. 1995).

Defendant argues that McAboy cannot establish a *prima facie* case of sexual harassment because she has not adduced evidence that comments by Ashe, Johnson, and others were unwelcome. Westervelt points to evidence that McAboy used the same or similar vulgar language with her co-workers when she was

---

a claim of supervisor sexual harassment or quid pro quo. Therefore, the Court proceeds under the sexual harassment framework developed for co-worker harassment.

frustrated with them. (Doc. 31-1 at 82–84, 171, 214–15.) Additionally, McAboy admitted to cussing at Johnson and other employees, whom she alleged used inappropriate language when speaking with her, on different occasions. (*Id.* at 82 .) (Doc. 31-2 at 11.) McAboys's own deposition testimony indicates that while Johnson was speaking to McAboy about his sexual dalliances, McAboy engaged in the conversation and told Johnson "[y]ou can't make no woman do anything, can't make me do nothing." (Doc. 31-1 at 75.) Additional evidence indicates that McAboy, at times, initiated conversations about sex with her co-workers. (*Id.* at 82; 88–89.)

Nevertheless, McAboy seemingly maintains that the comments by her co-workers were unwelcome because they were both offensive and inappropriate.[17] Certainly, Ashe's comment about wanting to "f**k" McAboy's daughter could be considered an unwelcome comment by a reasonable jury. (Doc. 31-1 at 176.) Moreover, McAboy's deposition testimony indicates that the sexual advances made by other alleged harassers were unwelcome as she told them no. Additionally, McAboy has pointed to her own deposition testimony that she complained about Ashe's comments. (Doc. 31-1 at 108–109.) Therefore, taking this evidence in the

---

[17] Plaintiff does not reply or respond to Defendant's assertion in its summary judgment brief that comments made to McAboy by Johnson were not unwelcome. (Doc. 32.) However, the Court finds that Plaintiff has adduced some evidence relating to the unwelcomeness of her co-workers comments and therefore analyzes this element.

light most favorable to the Plaintiff, a reasonable jury could conclude that at least some of the comments were not welcomed by McAboy.

## 2. Harassment Based on the Sex of the Employee

"Title VII does not prohibit profanity alone, however profane. It does not prohibit harassment alone, however severe and pervasive. Instead, Title VII prohibits discrimination, including harassment that discriminates based on a protected category such as sex." *Baldwin v. Blue Cross/Blue Shield of Alabama*, 480 F.3d 1287, 1301–02 (11th Cir. 2007); *see Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998). Therefore, workplace harassment is not "automatically discrimination because of sex merely because the words used have sexual content or connotations." *Oncale*, 523 U.S. at 80. "To establish that the harm alleged was 'based on her sex,' [Plainitff] 'must show that but for the fact of her sex, she would not have been the object of harassment.'" *Mendoza*, 195 F.3d at 1248 n.5 (quoting *Henson*, 682 F.2d at 904).

Defendant argues that McAboy has not presented sufficient evidence to create a genuine issue of material fact as to whether she was subject to harassment based on her sex.[18] However, McAboy has presented evidence, in the form of her

---

[18] McAboy again does not argue or brief this Court on why these comments were based on sex. (Doc. 32.) As with her failure to address whether the comments were unwelcome, the Court finds that McAboy has adduced some evidence on this issue and thus proceeds with its analysis on this element.

own deposition testimony, that Ashe called her a "b***h" and a "ho," 30-40 times in a four month period and stated to her that he would "f**k" McAboy's daughter. The Eleventh Circuit has noted that such comments can be sex based. See *Reeves*, 594 F.3d at 810 (holding that "calling a female colleague a 'b***h' is firmly rooted in gender. It is humiliating and degrading based on sex."); *Lockett v. Choice Hotels, Int'l, Inc.*, 315 Fed.Appx. 862, 864–66 (11th Cir. 2009) (noting that calling a female plaintiff a "ho" and "b***h" were sex based comments).

Yet, personal tension rather than gender can cause the harassment of a person within a protected class: "Personal animosity is not the equivalent of sex discrimination.... The plaintiff cannot turn a personal feud into a sex discrimination case...."*McCollum*, 794 F.2d at 610 (footnote and internal quotation marks omitted). McAboy and Ashe were good friends until 2016 when Ashe took a new job. (Doc. 31-1 at 107.) After Ashe moved departments, McAboy and Ashe did not get along, and Ashe began to call McAboy a "b***h" and a "ho." (*Id.* at 112.) This conflict between the two suggests that mutual tension not McAboy's sex may have motivated Ashe's comments.

Nevertheless, McAboy has presented evidence that Johnson spoke with her about having sex with other women and that Battle and a number of other co-workers made several sexually charged comments towards her. This evidence could

be seen by a reasonable jury to constitute comments or harassment based on the sex of McAboy.

### 3. Severe or Pervasive

To satisfy the fourth element of her sexual harassment claim, Plaintiff must present evidence that the harassment was or is subjectively and objectively[19] severe or pervasive. *Mendoza*, 195 F.3d at 1246. When "evaluating the objective severity of the harassment, this [C]ourt looks at the totality of the circumstances and considers, among other things: '(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance.'" *Gowski v. Peake*, 682 F.3d 1299, 1312 (11th Cir. 2012) (quoting *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1276 (11th Cir. 2002)).

The evidence[20] McAboy submitted to support her sexually hostile work environment claim is as follows:

---

[19]    "The objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances.'" *Oncale*, 523 U.S. at 81 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).

[20]    McAboy's evidence of harassment is based on her deposition alone. Although McAboy's deposition testimony indicated that there were witnesses to this harassment, McAboy has not submitted other evidence in support of her allegations.

Ashe called her a "b***h" and "ho" 30 to 40 times from February 2016 to July 2016. McAboy also alleges that Ashe told her he would "f**k her daughter." (Doc. 31-1 at 108–09, 112, 176.)

G. Will ("Will"), a co-worker, described the sex he had with another co-worker to her and that she once saw Will and another co-worker coming out of a storm shelter together. (*Id.* at 54–63.) McAboy alleges that Will also asked her to sleep with him (*Id.* at 61).

Fred Battle ("Battle"), a co-worker, tried to get her to "go to bed with him" or "meet him somewhere at a hotel room" and allegedly put McAboy's hand between his legs twice while at the Mill. (*Id.* at 64.)

A female co-worker, who was alleged to be having relations with other co-workers and McAboy's supervisor, discussed her sex life with McAboy (*Id.* at 84)

Another female co-worker asked McAboy if she had been with "a woman before" and told her "she ought to try it out sometime," often spoke about her sex life with McAboy, and asked McAboy if was having sex in order to pay for her car. (*Id.* at at 89–94)

Brian Johnson ("Johnson"), a co-worker, talked about sex with women and what he would make them do with McAboy, and he would tell her that he could make her do those things. (*Id.* at 72.)

Another co-worker told her he wanted to have sex with her often and told her he would give her money to do so. (*Id.* at 97–98.)

Ignacio Gonzalez, a co-worker, tried to get her to have sex with him, touched her butt, and tied to get her to put her hand on his "thang." (*Id.* at 101–03.)

James Scott, McAboy's supervisor, was having relations with one of her female co-workers. (*Id.* at 59–60.)

Although it is a close call, the Court finds that McAboy's allegations do rise to the level of an objectively severe or pervasive hostile work environment as established by case law[21] in this Circuit. *See e.g. Mendoza*, 195 F.3d at 1247–48.

McAboy argues that a similar level of a sexually hostile work environment permeated Westervelt as it did in the *Reeves* case. In particular, McAboy alleges that Johnson talked to her about his women "every day, every year," that several of her co-workers propositioned her on an almost daily basis, and that Ashe in particular called her a "b***h" and a "ho" 30-40 times in a four month time span or about every other three or four days in 2016. Harassing conduct that happens on a daily basis may create a hostile work environment. *See Dees v. Johnson Controls World Servs., Inc.,* 168 F.3d 417, 418 (11th Cir. 1999) (alleging "a continuous barrage of sexual harassment" that occurred on an "almost-daily" basis); *Johnson v. Booker T. Washington Broadcasting Service, Inc.,* 234 F3d at 501, 509 (fifteen instances in four months "was not infrequent").

---

[21] *See, e.g.*, *Guthrie v. Waffle House, Inc.*, 460 Fed.Appx. 803, 807 (11th Cir. 2012) (conduct of co-worker grabbing plaintiff's butt two to five times; "talk[ing] dirty" to her, saying that he would perform certain sexual acts on her, among other lewd comments, held to not reach severe level); *Leeth v. Tyson Foods, Inc.*, 449 Fed.Appx. 849, 853 (11th Cir. 2011) (finding conduct not sufficiently severe or pervasive where manager tried to pull plaintiff onto his lap, made comments that he wanted to "ram his tongue down her throat," dropped by her house uninvited, and called her on phone on numerous occasions and asked plaintiff to go out with him or meet him at hotel); *Lockett,* 315 Fed.Appx. at 863 (11th Cir. 2009) (per curiam) (affirming district court's finding that no genuine issue of material fact on hostile work environment claim existed despite evidence of co-worker's talking about sexual positions, telling plaintiff he would perform certain sexual acts on her, that her boyfriend "ain't F'ing [her] right," and that she needed "to get with a real guy," as well as touching her bottom).

McAboy also argues that the actions of some of her harassers were severe. McAboy testified that Battle on one or two occasions took her hand and placed it in between his legs, and that another co-worker touched her butt, put her hand on his "thang" and stood very close behind her. (Doc. 31-1 at 72, 101-103.)This activity in combination with McAboy's evidence of being solicited frequently by her co-workers throughout her employment at Westervelt suggests that the actions of her harassers under the totality of the circumstances could be found by a reasonable jury to be objectively severe. *See Hulsey v. Pride Restaurants, LLC*, 367 F.3d 1238, 1248–49 (11th Cir. 2004) (finding that "many direct as well as indirect propositions for sex," "following [plaintiff] into the restroom," "repeated attempts to touch [plaintiff's] breasts, place his hands down her pants, and pull off her pants," and "enlisting the assistance of others to hold her while he attempted to grope her" qualified as objectively severe).

However, "[I]f the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation." *Watkins v. Bowden*, 105 F.3d 1344, 1355 (11th Cir. 1997) (quoting *Harris*, 510 U.S. at 21–22). Here, McAboy's deposition testimony indicates that she often ignored inappropriate comments by her alleged harassers, including Johnson, and that she did not report these

comments.[22] (Doc. 31-1 at 75, 77.) For example, McAboy alleges that Battle made inappropriate comments to her, put her hand between his legs a couple of times, and still calls her to harass her. (*Id.* at 63–65.) Yet, McAboy's response to this behavior was to laugh, not report it, and continue to communicate with him after her termination. (*Id.* at 65–68.) In fact, McAboy admitted in her deposition that she still speaks with Battle on the phone and that she met with him at a sports store to catch up. (*Id.* at 69.)

Although McAboy's deposition testimony indicates that she rejected these advances by often telling her harassers she was married, the evidence indicates that McAboy was an active participant in some of the same conduct she now complains created a hostile work environment. McAboy complains that a number of her harassers always "talked about sex and stuff." (*Id.* at 54.) However, McAboy's testimony indicated that she also initiated conversations with her co-workers about sex, and that she engaged with her co-workers about these comments. (*Id.* at 74–75, 84–89.)

McAboy argues that her "bad relationship with her harassers was frequently cited by Scott and Noland as justification for blaming her, and writing bad

---

[22] Plaintiff's 2012 EEOC Charge did not reference any specific allegations of harassment by any of the individuals mentioned in her deposition testimony. (Doc. 31-2 at 11.) Instead, it broadly alleged she was "harassed on a daily basis by her male co-workers." (*Id.*)

performance reviews, and crediting her harassers accounts of events and consistently taking Plaintiff's male coworkers at their word over Plaintiff when stories about tensions between them were presented." (Doc. 32 at 30.) Yet, McAboy's argument is unaccompanied by any reference to evidence that supports this assertion. Moreover, despite these alleged disruptions, McAboy testified that she was able to complete her job duties. (Doc. 31-1 at 185.)

Ultimately, McAboy has not presented sufficient evidence that "the conduct unreasonably interfered with [her] job performance," *Mendoza*, 195 F.3d at 1246, and the Court finds that there is no question of material fact as to whether the alleged harassment created a hostile work environment under the totality of the circumstances.

### 4. Westervelt's Liability

Even if the harassment was severe or pervasive, Westervelt is only liable if Westervelt knew or should have of known of the harassment.[23] When alleged harassment is committed by a co-worker, "a Title VII plaintiff must show that the

---

[23] Plaintiff has not raised an argument that this is a quid pro quo sexual harassment claim or that this is a sexual harassment claim involving a supervisor. *See Hulsey v. Pride Restaurants, LLC,* 367 F.3d 1238, 1244 (11th Cir.2004) (noting that a quid pro quo claim occurs when an "employee's refusal to submit to a supervisor's sexual demands results in a tangible employment action being taken against her which involves a supervisor.") Nevertheless, Plaintiff attempts to establish liability for Westervelt through the "Cat's Paw" theory of liability in reliance on *Lowe v. Cardinal Health, Inc.* 61 F. Supp. 3d 1228, 1238 (N.D. Ala. 2014) (Doc. 32 at 30.) However, *Lowe* is both non-binding and distinguishable from the facts in front of this Court.

employer either knew (actual notice) or should have known (constructive notice) of the harassment and failed to take immediate and appropriate corrective action." *Watson v. Blue Circle, Inc.*, 324 F.3d 1252, 1259 (11th Cir. 2003) (citing *Breda v. Wolf Camera & Video*, 222 F.3d 886, 889 (11th Cir. 2000)). *See Vance v. Ball State Univ.*, 570 U.S. 421, 421 (2013) ("[When] the harassing employee is the victim's co-worker, the employer is liable only if it was negligent in controlling working conditions.").

"Actual notice is established by proof that management knew of the harassment." *Watson*, 324 F.3d at 1259 (citing *Miller*, 277 F.3d at 1278). "When an employer has a clear and published policy that outlines the procedures an employee must follow to report suspected harassment and the complaining employee follows those procedures, actual notice is established." *Id.* (citing *Breda*, 222 F.3d at 889; *Coates v. Sundor Brands, Inc.*, 164 F.3d 1361, 1364 (11th Cir. 1999)). "Constructive notice, on the other hand, is established when the harassment was so severe and pervasive that management reasonably should have known of it." *Id.*

McAboy asserts and presents evidence that Westervelt had actual notice of Ashe's harassment of her. (Doc. 31-1 at 17, 30.) However, McAboy has not presented any evidence that Westervelt had actual notice of any of the other alleged acts of harassment, including her allegations against Johnson. (Doc. 31-1 at 57–59,

68-69, 77, 79, 96, 99, 105.) Westervelt argues that it did not have constructive knowledge of these actions, nor was it liable for Ashe's harassment because it (1) had an established sexual harassment policy and McAboy did not report any of these additional incidents, and (2) the policy was used to stop Ashe's harassment. Westervelt's Handbook does contain a policy that prohibited discrimination, and provided reporting procedures. (Doc. 31-1, Ex. 4.) The undisputed evidence indicates that McAboy did not avail herself of such procedures in regard to her claims of harassment by individuals besides Ashe.

Nevertheless, McAboy asserts that her complaints had been ineffective and that Westervelt failed to address her concerns. When a reasonable jury can conclude a defendant did not "adequately investigate and respond to harassment complaints," or "take[ ] harassment complaints seriously," the effectiveness of the company's sexual harassment policy is challenged and summary judgment is inappropriate. *Watson,* 324 F.3d at 1261–62.

It is undisputed that employees, including McAboy, received copies of these policies and their updates in the Handbook. Yet, dissemination of the policy alone is insufficient. *Id.* at 1260. The policy must also be comprehensive and effective. *Id.* McAboy presents evidence that Phillips lacked familiarity with the reporting procedures. McAboy also testified in her deposition that she reported Ashe's

harassment to Scott and that Scott made the two apologize to each other. According to McAboy's testimony, Ashe's harassment of McAboy resumed two days after she reported his actions to Scott. McAboy testified that she again complained about Ashe to Scott, but that told her that they both would be fired if they went to the office. (Doc. 31-1 at 109.)This evidence, taken in the light most favorable to the plaintiff, creates a genuine issue of material fact as to whether Westervelt's policy was effective and whether it had constructive knowledge of such harassment.  However, since the alleged actions do not rise to the level of severe or pervasive McAboy's claims are still due to be dismissed.

### c. RETALIATION

McAboy also brings a Title VII retaliation claim against Westervelt. McAboy contends that Westervelt fired her because she complained about sexual harassment at the Mill.  Retaliation claims that rely on circumstantial evidence are analyzed using the burden-shifting paradigm established in *McDonnell Douglas Corp. v. Green,* 411, U.S. 792, 793 (1973). *See Bryant v. Jones*, 575 F.3d 1281, 1307 (11th Cir. 2009). Under the *McDonnell Douglas* framework, the plaintiff first bears the burden of establishing her prima facie case by "prov[ing] that [s]he engaged in statutorily protected activity, [s]he suffered a materially adverse action, and there

was some causal relation between the two events." *Goldsmith v. Bagby Elevator Co., Inc.* 513 F.3d 1261, 1277 (11th Cir. 2008).

### i. PRIMA FACIE CASE

McAboy has presented evidence that she complained about the alleged harassment to James Scott in March 2016. (Doc. 31-1 at 114.) An informal complaint may constitute statutorily protected activity under Title VII. *See Little v. United Tech., Carrier Transicold Div.*, 103 F.3d 956, 959–60 (11th Cir. 1997.)

McAboy asserts that she was subject to the following adverse actions in response to complaint: (1) she was suspended without pay, (2) placed on a performance improvement plan, (3) placed on probation, and (4) terminated. [24]

Assuming these actions were indeed adverse, McAboy has not presented sufficient evidence to establish a causal link for many of these actions. Many of the alleged adverse actions McAboy experienced occurred before she complained to Scott. [25] McAboy's complaint to Scott occurred in 2016. Yet, McAboy's latest suspensions without pay and probations occurred in 2012 and 2015. Therefore, McAboy is unable to establish a causal link between her protected activity and

---

[24] To the extent McAboy argues that ignoring her or discrediting her allegations constituted materially adverse actions, the Court finds that such actions do not rise to the level of materiality required to constitute adverse actions.

[25] Although McAboy argues that she suffered retaliation for her 2012 EEOC charge, such allegations are untimely as they have not been administratively exhausted and more than 90 days have passed since McAboy received her right to sue letter on this charge. (Doc. 31-2 at 12.)

these actions because they occurred before her complaint. Moreover, to the extent that McAboy argues that there is a causal link between her improvement plans and her protected activity, McAboy has not pointed this Court to any evidence that she was placed on a coaching plan after she complained to Scott. Therefore, there is no evidence from which a reasonable jury could find a causal link between her protected activity and these adverse actions.

The only alleged adverse action that occurred after McAboy complained to Scott was her termination in June 2016. McAboy recalls that she complained to Scott in March or April 2016. Taking the facts in the light most favorable to the plaintiff, the complaint occurred in April 2016 and McAboy was fired two months later in June 2106. Additional evidence indicates that Scott, who she complained to, was involved in the decision to terminate her. Therefore, the Court finds that McAboy's protected activity was close enough with her termination to establish causation, and therefore McAboy has met her *prima facie* case. *See Thomas v. Cooper Lighting*, Inc., 506 F.3d 1361, 1364 (11th Cir. 2007)

### ii. Legitimate, Nondiscriminatory Reason and Pretext

Because McAboy has shown a *prima facie* case of retaliation, the burden shifts to Westervelt to articulate a legitimate, nondiscriminatory reason for firing McAboy. The defendant's burden here is "exceedingly light." *Perryman v. Johnson Products*

*Co., Inc.*, 698 F.2d 1138, 1142 (11th Cir. 1983). "At this stage of the inquiry, the defendant need not persuade the court that its proffered reasons are legitimate; the defendant's burden is 'merely one of production, not proof.'" *Id.* (quoting *Lee v. Russell County Bd. of Educ.*, 684 F.2d 769, 773 (11th Cir. 1982)). Westervelt has met its burden at this stage by asserting that they fired McAboy due to her failure to improve, history of disciplinary problems, and most recent confrontation involving Ashe. *See Hendricks v. Baptist Health Services,* 278 F. Supp. 2d 1276, 1288 (11th Cir. 2003).

Therefore, the burden thus shifts back to McAboy to show that Westervelt's proffered reason is mere pretext for unlawful retaliation. *See Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1432 (11th Cir. 1998). However, Plaintiff offers no argument that the decision was pretextual. (*See* Doc. 32 at 32–35.) McAboy's evidence of pretext, which is offered in support of her disparate treatment claim, does little to establish that she was not terminated for documented instances of poor performance. In contrast, Defendants have offered evidence documenting McAboy's long history of poor performance reviews and disciplinary problems. During her time at Westervelt, McAboy received a number of write ups, including:

> November 2001: In a performance review, McAboy received a "Needs Improvement" for the attribute "Cooperative Attitude." (Doc 31-2 at 26.) The review provided, under a comments section, that McAboy "[h]ad a few problems in employee relations earlier.

Relations seem to be better. Look for continued improvement in this area." (*Id.*)

May 2002: In a performance review, McAboy received a "Does Not Meet" rating for "Teamwork." (*Id.* at 27.)

August 2002: McAboy's performance review provides an action plan stating that she should "communicate better [with] others." (*Id.* at 32.)

July 2009: McAboy's performance evaluation states that she "will have to get better at working harmonious[ly] with her co-workers and supervisor." (*Id.* at 39.)

October 2010: McAboy's performance evaluation states that "[she] will have to get better at working harmonious[ly] with her co-workers and supervisor." (*Id.* at 46.)

October 2011: McAboy's performance evaluation states that she "still needs to continue to improve on working harmoniously with her co-workers." (*Id.* at 48.)

January 2012: McAboy received a three-day suspension following a "confrontation" with a co-worker in which she "used some very inappropriate language." (*Id.* at 49.)

September 2012: Following a confrontation with the same male co-worker, McAboy received a one-week suspension without pay and was put on one-year probation. (*Id.* at 54–55.) She was also given a final warning about her attitude and performance. (*Id.*)

October 2012: McAboy received a "Does Not Meet Expectations" in her annual performance review, which also stated, "[McAboy] cannot have any more incidents with job performance or working harmonious[ly] with fellow associates." (*Id.* at 56–57.)

June 2015: McAboy was placed on probation for eighteen months and suspended for two weeks without pay for failure to improve her

performance along with using a cell phone at her work station in violation of a company policy. (*Id.* at 64.)

While Westervelt offers this evidence, Plaintiff has not offered evidence that indicates the decision was pretextual other than her assertion that there is a "history of incidents of bias against [McAboy] by management." (Doc. 32 at 33.) McAboy broadly alleges unequal punishment and that her supervisors and co-workers lied about her. However, "[c]onclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination where [an employer] has offered… extensive evidence of legitimate, non-discriminatory reasons for its actions." *Young v. General Foods Corp.*, 840 F.2d 825, 830 (11th Cir.1988)) (quoting *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 597 (11th Cir.1987)). Therefore, McAboy's retaliation claim fails because she has not presented sufficient evidence to create a genuine issue of material fact as to whether she was fired in retaliation for her complaint.

## IV.   CONCLUSION

For the reasons stated above, Westervelt's motion (doc. 30) is due to be granted. An order consistent with this opinion will be entered contemporaneously herewith.

**DONE** and **ORDERED** on December 11, 2018.

_____
L. Scott Coogler
United States District Judge

195126